Hovanes Margarian, SBN 246359
hovanes@margarianlaw.com
Armen Margarian, SBN 313775
armen@margarianlaw.com
Shushanik Margarian, SBN 318617
shushanik@margarianlaw.com
THE MARGARIAN LAW FIRM
801 North Brand Boulevard, Suite 210
Glendale, California 91203
Telephone Number:    (818) 553-1000
Facsimile Number:    (818) 553-1005

Attorneys for Plaintiff,
LUSINE GHAZARYAN

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUSINE GHAZARYAN, as an individual, on behalf of herself, all others similarly situated, and the general public, | Case No.: (Class Action) |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES:** |
| vs. | |
| EUROMARKET DESIGNS, INC. d/b/a CRATE & BARREL, an Illinois Corporation; and DOES 1 through 10, inclusive, | 1. **Violations of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200,** *et seq.* |
| Defendants. | 2. **Violations of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500,** *et seq.* |
| | 3. **Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750,** *et seq* |
| | **DEMAND FOR JURY TRIAL** |

///

///

///

///

///

///

**COMPLAINT**

NOW COMES the Plaintiff, LUSINE GHAZARYAN ("Plaintiff" or "Ghazaryan"), on behalf of herself, all others similarly situated, and the general public, by and through her attorneys, The Margarian Law Firm, with Plaintiff's Complaint for Damages against Defendants EUROMARKET DESIGNS, INC. d/b/a CRATE & BARREL ("Defendant" or "Crate & Barrel"), an Illinois Corporation, and DOES 1 through 10:

**INTRODUCTION**

1.   "If everyone is getting a deal, is anyone really getting a deal?"[1] This class action involves Defendant's unlawful, unfair, and fraudulent business practice commonly referred to as "false reference pricing." False reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deeply "discounted" price. The result is a shame price disparity that misleads consumers into believing they are receiving a good deal, inducing them into making a purchase.

2.   The California legislature and federal regulations prohibit this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers, including Defendant have an incentive to lie to customers and advertise false sales. The resulting harm is tangible—the bargain hunter's expectations about the product he purchased is that it has a higher perceived value and he may not have purchased the product but for the false savings.

3.   The net effect of the practice is that the market value of the falsely advertised product is artificially inflated because the product is never subjected to true market forces absent the communication of inflated value made by the false discounting. To illustrate, Crate & Barrel may advertise a kitchen blender at $100, representing that this constitutes a 50% discount off of its "regular" price of $200, even though Crate & Barrel did not previously sell the blender at this purported "regular" price.

---

[1] David Streitfeld, *It's Discounted, but is it a Deal? How List Prices Lost Their Meaning,* New York Times, https://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html, (March 6, 2016), last accessed April 28, 2017.

4.  The United States Court of Appeals for the Ninth Circuit succinctly stated: "Most consumers have purchased merchandise that was marketed as [being] 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to bargain [therefore] have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price [in order] to induce customers to purchase merchandise at a purportedly marked-down 'sale' price. Because such practices are misleading—and effective—the California legislature has prohibited them." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098. 1101 (9th Cir. 2013).

5.  Crate & Barrel has engaged in false reference pricing as a frequent business practice, thereby misleading consumers. Crate & Barrel does this with many of the products it sells, especially more expensive products such as kitchen appliances. These products are never sold for their "Suggested Retail," neither at Crate & Barrel stores nor at its competitors' stores. The reference price appears as the suggested retail followed by the retailer's actual price.

6.  However, the suggested retail is total fiction. The merchandise sold at Crate & Barrel is never offered for sale, nor actually sold, at the represented reference price. The reference price is used exclusively as a benchmark from which the false discount and corresponding "sale" price is derived. Crate & Barrel's scheme has the effect of tricking consumers into believing they are getting a significant deal by purchasing merchandise at a steep discount, when in reality, consumers are paying for merchandise at its regular price.

7.  The advertised suggested retails are fictitious because they do not represent a *bona fide* price at which Crate & Barrel previously sold the products for as required by the Federal Trade Commission ("FTC"). In addition, the "Suggested Retail" was not (and never has been) the prevailing market retail price within three months of immediately preceding the publication of the advertised former reference price, as required by California law.

8.  Through its false and misleading marketing, advertising, and pricing scheme, Crate & Barrel violated and continues to violate California and federal law prohibiting advertising goods for sale as discounted from former prices that are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Crate & Barrel violated and continues to violate: California's Unfair Competition Law, Business & Professions Code § 17200, *et seq.,* (the "UCL");

California's False Adverting Law Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA") which prohibits unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

9. Plaintiff brings this action on behalf of himself and other similarly situated consumers who purchased one or more of Crate & Barrel's deceptively priced products with false reference priced Suggested Retails.

10. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in consumer's minds, and to obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff also seeks to enjoin Crate & Barrel from using false and misleading misrepresentations regarding retail price comparisons in their labeling and advertising permanently. Further, Plaintiff seeks to obtain damages, restitution, and other appropriate relied in the amount by which Crate & Barrel was unjustly enriched as a result of its sales of merchandise offered at a false discount.

11. Plaintiff also seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the stator requirements for and award of attorneys' fees.

### JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13. This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,0000,000 and at least some members of the proposed Class have a different citizenship from Crate & Barrel.

14. This Court has personal jurisdiction over Crate & Barrel because: (i) a substantial portion of the wrongdoing alleged in this Complaint took place in the State of California, (ii) Crate & Barrel is authorized to do business in this state, (iii) Crate & Barrel has sufficient minimum contacts with this state, and/or (iv) Crate & Barrel otherwise intentionally avails itself of the markets in this state through

the promotion, marketing, and sale of its products in this state, thus rendering this Court's exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

15.   Venue is proper under 28 U.S.C. § 1391(b) because Crate & Barrel transacts substantial business in this District and a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

16.   Plaintiff LUSINE GHAZARYAN is a resident of Los Angeles County, California. Plaintiff purchased a Breville Barista Express Espresso Machine BES870XL ("Barista Express"), which was marketed, sold, or otherwise delivered to Ghazaryan by Crate & Barrel.

17.   Plaintiff appears in this action on behalf of herself, on behalf of all others similarly situated, and pursuant to statutory authority provided under California Business and Professions Code §§ 17200, *et seq.* ("Unfair Competition Law") and 17500, *et seq.* ("False Advertising Law").

18.   Defendant, CRATE & BARREL. INC., is an Illinois Corporation licensed to do business, and is doing business throughout the United States, with its principal place of business located at 1250 Techny Road, Northbrook, IL 60062. Defendant operates Crate & Barrel retail stores and the crateandbarrel.com website.

19.   Crate & Barrel is an omni-channel specialty retailer of high-quality products for the home. Defendant advertises, markets, and distributes, and/or sells furniture, home décor, cookware, dinnerware, and more

20.   Currently, Crate & Barrel operates more than 100 retail locations throughout the United States. Crate & Barrel carries a variety of premium products under its own brand name, but primarily carries and sells other manufacturers' products.

21.   Crate & Barrel transacts business in Los Angeles County, California, and at all relevant times developed, promoted, marketed, distributed, and/or sold the Class Products, throughout the United States, including California. Defendant has significant contacts with the State of California by transacting business in this state.

22.   The true names and capacities of the Defendants sue herein as DOES 1 through 10, inclusive, are unknown to the Plaintiff. The Plaintiff therefore sue those Defendants by such fictitious names. When

the true names and capacities of these Defendants have been ascertained, the Plaintiff will seek leave of this Court to amend this Complaint to insert in lieu of such fictitious names the true names and capacities of the fictitiously named Defendants. The Plaintiff is informed and believe, and thereon allege, that these Defendants participated in, and in some part are responsible for, the illegal acts alleged herein. Each reference in this Complaint to Crate & Barrel is also a reference to all Defendants sued as DOES.

23.   Whenever reference is made in this Complaint to any act or omission of Crate & Barrel, such reference shall be deemed to mean that Crate & Barrel's officers, directors, employees, agents, and/or representatives did, ratified, or authorized such act or omission while actively engaged in the management, direction, or control of the affairs of Crate & Barrel, or while acting within the course and scope of their duties.

24.   Whenever reference is made in this Complaint to any act or omission of Defendants, such reference shall be deemed to mean the act or omission of each Defendant acting jointly and severally.

25.   Plaintiff is informed and believes and based thereon alleges that at all relevant times, each Defendant was a developer, producer, distributor, and seller of Class Products, was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes and based thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant is in some manner legally responsible for the damages by Plaintiff and the Class members.

26.   Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

**FALSE REFERENCE PRICING—AN OVERVIEW**

27.   A retailer's "reference price," the stated price presented alongside the retailer's "on sale" price, provides consumers a reference point with which to evaluate the prospective purchase. The reference

price is often described with terms such as "Regular Price," "Original Price," "Former Price," and/or "List Price."

28.   A retailer's reference price impacts the consumer's behavior in the marketplace. As the reference price increases, so does the consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.

29.   When the reference price is bona fide and truthful, it helps consumers make informed purchasing decisions. In contrast, consumers are harmed when merchants advertise their products alongside falsely inflated former prices, *i.e.,* "false reference prices," as consumers are provided a false sense of value. This manipulation might cause consumers to overestimate product value, purchase something that they might not have otherwise purchased, spend more on an item than they might have, or even prematurely stop their shopping before they found the best bargain.

30.   The hidden nature of false reference pricing makes it effective. Consumers, unaware of the practices at issue, instead complete their purchases feeling like they "got a good deal." In addition, retailers make falsely discounted sales without suspicion because consumers do not have access to the comprehensive historical pricing information necessary to reveal the fraud.

31.   Beyond the adverse impact upon consumers' welfare, the practice of employing false reference pricing also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition, injuring honest competitors that sell the same or similar products, or otherwise compete in the same market, using only valid and accurate reference prices.

32.   Over the past forty years, a substantial body of research on the effects of reference prices (also referred to in the relevant literature as "advertised reference prices," "external reference prices," and "comparative prices") shows that reference prices: (i) impact consumers' perceptions of the value of the sales deal; (ii) impact consumers' willingness to make the purchase; and (iii) decrease consumers' intentions to search for a lower price. Consumers form an "internal reference price," also known as an "expected price," an "aspirational price" (a price the consumer would like to pay), or a "normative price" (a price that is "fair"). Consumers store and retrieve the "internal reference price" from memory to judge

the merits of a specific price offer. Even where an advertised reference price is exaggerated and not itself completely believed, perceptions of value increase in comparison to a promotion with no advertised reference price. Thus, retailers' use of reference prices influences consumers' "internal reference price," and subsequently, increase consumers' willingness to purchase the product.

33.     As a result of its effectiveness as a marketing practice, the use of false reference prices has proliferated recently, in both frequency and in degree. *See, e.g.,* David A. Friedman. *Reconsidering Fictitious Pricing,* 100 Min. L. Rev. 921, 923 (2016).

## FACTUAL ALLEGATIONS

34.     Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, Defendant Crate & Barrel engages in a scheme to defraud its customers by perpetually discounting merchandise sold in its store and on its website. Crate & Barrel constantly advertises the merchandise by attaching a price tag to the time with a false reference price and a corresponding sale price immediately following the reference price. The suggested retail price indicates to the consumer that the reference price is a former price of the item that is now being offered at a substantial discount. The reference price conveys to the customer the purported regular price or former price of the item. The sale price conveys to the customer a deeply discounted price at which the item is presently being offered for sale.

35.     However, at no time are the products ever offered for sale at the suggested price. The suggested price is merely a false reference price.

36.     This practice is not accidental. Crate & Barrel deliberately and artificially sets the false reference prices high so that customers feel that they are getting a good deal when purchasing products. The products, however, were never intended nor actually sold at the higher reference price. This practice is a fraudulent scheme intended to deceive consumers into: (1) making purchases they otherwise would not have made; and/or (2) paying substantially more for merchandise consumers believed was heavily discounted and thus, worth more than its actual value.

37.     Retailers, including Crate & Barrel, understand that consumers are susceptible to a good bargain, and therefore, Crate & Barrel has a substantial interest in lying in order to generate sales.

38.     Plaintiff Ghazaryan is informed and believes and based thereon alleges that on or about July 17, 2020, Plaintiff purchased a Breville Barista Express from a local Crate & Barrel store located at 60

W Colorado Blvd, Pasadena, CA 91105.

39.   While at the store, Plaintiff Ghazaryan walked towards the section with various kitchen appliances. There, she saw the Barista Express priced at $699.95, marked down from a Suggested Retail of $999.00.

40.   The Barista Express is an all-in-one espresso machine that allows owners to grind brew espresso from beginning to end using one machine. The Barista Express includes a built-in water tank, bean hopper, coffee grinder, pressurized water heater, and a steaming wand for milk.

41.   Relying on Crate & Barrel's false and deceptive advertising, Plaintiff Ghazaryan purchased the Barista Express for $699.95 from Crate & Barrel believing he got a good deal because the item was marked down from a Suggested Retail of $999.00. An alleged 30% savings over what she believed was the regular retail price. Plaintiff Ghazaryan was deceived into thinking she got a deal on a $999.00 espresso machine.

42.   Soon after she purchased the Barista Express, Plaintiff Ghazaryan learned that she did not in fact get a deal on the Barista Express, but instead paid the standard price.

43.   Plaintiff's investigation of Crate & Barrel revealed that the merchandise sold at Crate & Barrel bears a price tag with a false reference price and a substantially discounted sale price printed directly beneath the "crossed out" reference price.

44.   Plaintiff's investigation confirmed that the product Ghazaryan purchased, the Breville Barista



1    Express Espresso Machine, was priced with a false reference price and corresponding discounted price

2    in the 90-day period immediately preceding Plaintiff's purchase. See screenshot below:

3        45.    The Crate & Barrel website reflects a suggested price of $999.00 and a "sale" price of

4    $699.95. However, the purported suggested price of $999.00 was a false reference price. Crate & Barrel

5    has never offered the item for sale for more than $699.95. At the time this complaint was written, the

6    company Breville itself sold the machine for $699.95; Amazon sold the product for $687.50; Best Buy

7    sold it for $699.95; and Bed Bath and Beyond sold it for $699.99.

8        46.    The false reference pricing is not exclusive to the Barista Express. Further examples, include:

9    DeLonghi Black 5-Qt. Air Fryer ("original" price $259.95 v. "sale" price $199.95); KettlePizza Deluxe

10   USA Outdoor Pizza Oven Kit ("original" price $219 v. "sale" price $199.95); Vitamix Ascent A2500

11   White Blender ("original" price $599.99 v. "sale" price $499.9); Staub Grenadine Perfect Pan ("original"

12   price $343.00 v. "sale" price $299.99).





47.    The reference prices listed and advertised on the products sold at Crate & Barrel are fake reference prices, utilized only to perpetuate Crate & Barrel's fake discount theme.

48.    Crate & Barrel knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California and federal law.

49.    Crate & Barrel fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

50.    At all relevant times, Crate & Barrel has been under a duty to Plaintiff and the Class to disclose

the truth about its false discounts.

51.     Plaintiff relied upon Crate & Barrel's artificially inflated reference prices and false discounts when purchasing the product from Crate & Barrel. Plaintiff would not have made such purchase but for Crate & Barrel's representations regarding the false reference price and the fictitious sales price of the merchandise.

52.     Plaintiff and the Class reasonably and justifiable acted and relied on the substantial price differences that Crate & Barrel advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiff, like other Class Members, was lured in, relied on, and was damaged by the deceptive pricing scheme that Crate & Barrel carried out.

53.     Crate & Barrel intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the Class to purchase merchandise in its store.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

54.     This action seeks financial compensation for members of the Class in connection with their purchase of products that had false reference prices from Crate & Barrel. Plaintiff does not seek: (i) damages for personal, bodily, or emotional injury or wrongful death; or (ii) damages for becoming subject to liability or legal proceedings by others.

55.     This action has been brought and may properly be maintained as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23 and other applicable law by Plaintiff on behalf of themselves and a Class as defined as follows:

a.     *National Class*: The Class that Plaintiff seek to represent ("National Class") consists of all persons and entities within the United States who purchased or will purchase products from Crate & Barrel, on or after Defendant placed the products into the stream of commerce. Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

b. *California Subclass*: The Class that Plaintiff seek to represent ("California Subclass") consists of all persons and entities who purchased or will purchase products from Crate & Barrel in California, on or after the date Defendant placed the products into the stream of commerce. Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

56.    There is a well-defined community of interest in the litigation, and the proposed class is ascertainable:

a.    *Common Questions Predominate*: Common questions of law and fact exist as to all class members, and predominate over any questions that effect only individual members of the class, if there are any individual questions. The common questions of law and fact include, but are not limited to:

1)    Whether Defendants knew the prices of its products were false;

2)    Whether Defendants violated California consumer protection statutes;

3)    Whether Defendants breached their express warranties;

4)    Whether Defendants breached their implied warranties;

5)    Whether the advertisements and statements made by Defendants were and are false and/or had and have had a tendency to deceive customers;

6)    Whether Defendants failed to adequately disclose that the prices of its products did not reflect the actual "original" price;

7)    Whether the reference prices were deceptive;

8)    Whether the false reference prices are an unlawful, unfair and/or "fraudulent" business act or practice within the meaning of the Business and Professions Code §§ 17200 et seq.;

9)    Whether Defendants had a duty to Plaintiff and the Class to disclose that the reference prices were not reflective of the actual price of the products;

10)    Whether Defendants knew or reasonably should have known about the influence of the misrepresented prices on consumer purchasing behavior.

b.     *Typicality*: Plaintiff' claims are typical of the claims of the class members. Plaintiff and the class members sustained the same types of damages and losses.

c.     *Numerosity and Ascertainability*: The classes are so numerous, thousands of persons, that individual joinder of all class members is impractical under the circumstances. The class members are ascertainable by, among other things, sales records and by responses to methods of class notice permitted by law.

d.     *Adequacy*: Plaintiff are members of the Class and will fairly and adequately protect the interests of the members of the class. The interests of the Plaintiff are coincident with, and not antagonistic to, those other members of the Class. Plaintiff are committed to the vigorous prosecution of this action and have retained counsel, who are competent and experienced in handling complex and class action litigation on behalf of consumers.

e.     *Superiority and Substantial Benefit*: The prosecution of separate actions by individual members of the Class would create a risk of: (1) Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and (2) Adjudication with respect to the individual members of the Class would substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of the claims brought herein by each Class Member would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contract provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the aforesaid conduct of Defendants. The certification of the Class would allow litigation of claims that, in view of the expense of the litigation may be sufficient in amount to support separate actions.

## TOLLING OF STATUTE OF LIMITATIONS

57.     Any applicable statutes of limitation have been equitably tolled by Crate & Barrel's affirmative acts of fraudulent concealment, suppression and denial of the facts alleged herein.  Such acts of fraudulent concealment include, but are not limited to, intentionally covering up and refusing to publicly disclose that prices of products are falsely mislabeled. Through such acts of fraudulent

-14-

concealment, Crate & Barrel was able to actively conceal from the public for years the truth about the misrepresentation, thereby tolling the running of any applicable statute of limitations.

58.   Defendants are estopped from relying on any statutes of limitation because of their misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the falsely referenced prices, Defendants were, at all times aware of the misrepresentation in prices as described herein but at all times continued to sell and market various products at "sale" prices despite this knowledge.

## FIRST CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION LAW ("UCL")

(Business & Professions Code §§ 17200, *et seq.*)

59.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

60.   Plaintiff brings this cause of action on behalf of themselves and on behalf of California Class.

61.   The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue, or misleading" advertising. Cal. Bus. Prof. Code § 17200.

62.   The UCL imposes strict liability. Plaintiff need not prove that Crate & Barrel intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### **"Unlawful" Prong**

63.   The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a).

64.   Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by Crate & Barrel, are described as deceptive practices that would violate the FTCA:

  a.   One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably

substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious –*__for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction –the "bargain" being advertised is a false one__*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

    b.   A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith –and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

    65.   In addition to federal law, California law also expressly prohibits false former pricing schemes. California's False Advertising Law, Bus. & Prof. Code § 17501, ("FAL"), entitled *"Worth or value; statements as to former price,"* states:

> For the purpose of this article the worth or value of anything advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published. *__No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement__* or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement. Cal. Bus. & Prof. Code § 17501 (emphasis added).

    66.   Defendants Crate & Barrel and DOES 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following *__unlawful__* business acts and practices:

    a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in violation of Civil Code Section 1770(a)(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of Civil Code Section 1770(a)(7);

c. Advertising goods or services with intent not to sell them as advertised in violation of Civil Code Section 1770(a)(9); and

d. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to the merchandise sold by Crate & Barrel, in violation of Civil Code Section 1770(a)(13).

67. As detailed in Plaintiff's Third Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

68. The violation of any law constitutes an "unlawful" business practice under the UCL. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

**"Unfair" Prong**

69. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

70. Defendants Crate & Barrel and Does 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following ***unfair*** business acts and practices:

a. Engaging in false reference pricing in connection with the goods that Crate & Barrel sold (and continues to sell) such that California consumers (who could not have reasonable avoided such predatory schemes) are substantially injured, something that serves no benefit to consumers or competition; and

b. Engaging in false reference pricing in connection with the goods that Crate & Barrel sold (and continues to sell) such that Defendants gain an unfair advantage over lawfully

competing retailers.

c. Engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

71.    The harm to Plaintiff and Class members outweighs the utility of Crate & Barrel's practices. There were reasonably available alternatives to further Crate & Barrel's legitimate business interests other than misleading and deceptive conduct described herein.

**"Fraudulent" Prong**

72.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

73.    Defendants Crate & Barrel and DOES 1 through 10, and each of them, have violated (and continue to violate) the UCL by engaging in the following ***fraudulent*** business acts and practices: using misrepresentations, deception, and/or concealment of material information in connection with the reference prices of goods Crate & Barrel sold (and continues to sell), such that California consumers and other members of the public in California are likely to be deceived. These misrepresentations played a substantial role in Plaintiff's decision to purchase those products at steep discounts, and Plaintiff would not have purchased those products without Crate & Barrel's misrepresentations.

74.    Crate & Barrel's practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Crate & Barrel's practices constitute an unlawful, unfair, and fraudulent practice within the meaning of the UCL.

75.    Crate & Barrel's violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated reference prices and substantially discounted sale prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the Class.

76.    Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and order Crate & Barrel to cease this unfair competition, as well as disgorgement and restation to Plaintiff and the Class of all Crate & Barrel's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

VIOLATION OF FALSE ADVERTISING LAW ("FAL")

(Business & Professions Code §§ 17500, *et seq.*)

77.   Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Plaintiff' Complaint.

78.   The FAL prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property (among other things), including, but not limited to, false statements as to worth, value, and former price.

79.   This section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement. Cal. Bus. & Prof. Code § 17501.

80.   Crate & Barrel's routine advertising discounted prices from false reference prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices was an unfair, untrue, and misleading practice.

81.   This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were, therefore, leading to the false impression that the products sold at Crate & Barrel were more than they actually were.

82.   Crate & Barrel misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

83.   The false reference pricing that is subject of this Complaint was (and continues to be) likely to deceive members of the public.

As a direct and proximate result of Crate & Barrel's misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Crate & Barrel to restore this money to Plaintiff and all Class members and to enjoin Crate & Barrel from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CAUSE OF ACTION**

VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT ("CLRA")

(California Civil Code § 1750, *et seq.*)

84.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

85.   This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d).

86.   Crate & Barrel's sale of the merchandise in its retail store to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

87.   Crate & Barrel violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the merchandise:

    a.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have in violation of Civil Code Section 1770(a)(5);

    b.  Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another in violation of Civil Code Section 1770(a)(7);

    c.  Advertising goods or services with intent not to sell them as advertised in violation of Civil Code Section 1770(a)(9); and

    d.  Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions as to the merchandise sold by Crate & Barrel, in violation of Civil Code Section 1770(a)(13).

88.   Pursuant to § 1782(a) of the CLRA, on December 4, 2020, Plaintiff's counsel notified Crate & Barrel in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers

of Crate & Barrel's intent to act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and all others similarly situated, and also on behalf of the general public, pray for judgment against all Defendants as follows:

1. An order certifying the class and designating Lusine Ghazaryan as the Class Representative and her counsel as Class Counsel;

2. Awarding Plaintiff and the proposed Class members damages;

3. Awarding restitution and disgorgement of all profits and unjust enrichment that Crate & Barrel obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practice described herein;

4. Ordering the Defendant immediately stop selling the Breville Barista Express Espresso Machine and similar items with false reference prices;

5. Ordering the Defendant immediately stop advertising false reference prices;

6. Ordering the Defendant identify all persons within the United States and the State of California who purchased the Breville Barista Express Espresso Machine and similarly falsely priced items, who may be identified through receipts, third-party distributors, and collected data; or alternatively that Defendant create a Cy Pres account and deposit all amounts received from selling the Breville Barista Express Espresso Machine and similarly falsely priced items;

7. Ordering the Defendant return all amounts deposited in such Cy Pres accounts to the persons who can provide sufficient proof of purchase of the Breville Barista Express Espresso Machine or other similarly falsely priced items;

8. Ordering the Defendant use the remaining amounts to correct further deficiencies and violations of California's consumer protection status;

9. Awarding the Plaintiff recover the costs of this action; and

10. Awarding the Plaintiff be granted such other and further relief as the Court may deem to be just and proper.

///

///

1

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

DATED: July 13, 2021                          THE MARGARIAN LAW FIRM


By */s/ Hovanes Margarian*
Hovanes Margarian,
Attorney for Plaintiff,
and all others similarly situated.

**DECLARATION OF HOVANES MARGARIAN**

**PURSUANT TO CIVIL CODE § 1780(d)**

I, HOVANES MARGARIAN, declare as follows:

1.      I am an attorney at law duly licensed to practice before all courts of the State of California and am the principal attorney at the Margarian Law Firm, one of the counsels of record for Plaintiff. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

2.      I am informed and believe that venue is proper in this court pursuant to Civil Code § 1780(d) based on the following facts:

      a.   Defendant has performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Los Angeles, California; and

      b.   At all relevant times herein, Plaintiff GHAZARYAN resided in Los Angeles County.

WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 9th Day of July 2021 at Glendale, California.

DATED: July 13, 2021                THE MARGARIAN LAW FIRM


By */s/ Hovanes Margarian*
Hovanes Margarian,
Attorney for Plaintiff,
and all others similarly situated.